**IT IS ORDERED as set forth below:**



Date: September 26, 2019

_____
Susan D. Barrett
United States Bankruptcy Judge
Southern District of Georgia

---

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE

SOUTHERN DISTRICT OF GEORGIA
Augusta Division

| | | |
|---|---|---|
| IN RE: | ) | Chapter 13 Case |
| RONNIE SCOTT, | ) | Number <u>17-10532</u> |
| | ) | |
| Debtor | ) | |
| _____ | ) | |
| | ) | |
| RONNIE SCOTT, | ) | |
| | ) | Adversary Proceeding |
| Plaintiff | ) | No. <u>19-01007</u> |
| | ) | |
| v. | ) | |
| | ) | |
| AMERICASH LOANS LLC, | ) | |
| | ) | |
| Defendant | ) | |
| _____ | ) | |

**<u>OPINION AND ORDER</u>**

Before the Court is the Motion to Dismiss filed by
AmeriCash Loans, LLC ("Americash") for failure to state a claim

AO 72A

(Rev. 8/82)

and requesting dismissal of this adversary proceeding under the Federal Arbitration Act (9 U.S.C. §1 et seq. ("FAA")).   The Court has jurisdiction under 28 U.S.C. §1334.

### FINDINGS OF FACT

In October 2016, Ronnie Scott ("Debtor"), a Georgia resident, physically travelled to South Carolina and obtained a $650.00 loan from Americash.   Subsequently, Debtor filed a Chapter 13 bankruptcy petition.   AmeriCash filed a proof of claim for $1,404.10 (unsecured).   Chap. 13 Case No. 17-10532, Claim No. 7.   Debtor's chapter 13 plan was confirmed requiring him to pay "$380.00 for 36 months or that amount of time needed to pay a 0% dividend to unsecured creditors; whichever is greater."   Chap. 13 Case No. 17-10532, Dckt. Nos. 19 and 24.

Debtor filed this adversary complaint seeking damages and alleging Americash's proof of claim is unenforceable under Georgia's Payday Lending Act, O.C.G.A. §16-17-1 et seq. and Georgia's usury laws, O.C.G.A. §7-4-2.[1]

Americash seeks to dismiss this adversary complaint for

---

[1] In addition to filing this adversary complaint, Debtor subsequently objected to Americash's proof of claim in the underlying bankruptcy case; however, Debtor has withdrawn his objection to Americash's proof of claim, relying instead on this adversary proceeding.   Chapter 13 Case No. 17-10532, Dckt. No. 34.

failure to state a claim and argues the dispute is subject to arbitration. The pertinent terms of the Arbitration Agreement are as follows:

> Either party may mail the other a demand to arbitrate, even if a lawsuit has been filed. The demand should describe the Dispute and relief sought. The receiving party must mail to the other party a response within 20 days after receipt of a demand to arbitrate. Who arbitrates? AAA, JAMS, or another agreed Arbiter. If you mail the demand to arbitrate, you may choose American Arbitration Association ("AAA") (1-800-778-7879) http://www.adr.org ("AAA") or JAMS (1-800-352-5267) http://www.jamsadr.com ("JAMS") as the Arbiter, or your demand may state that you want the parties to choose an attorney, former judge or other arbiter in good standing with AAA or JAMS ("Local Arbiter") to serve as the Arbiter. We must mail to you a response to your demand within twenty (20) days after receiving your demand. If in your demand you select AAA or JAMS as the Arbiter, then AAA or JAMS, as applicable, shall be the Arbiter. If in your demand you propose a Local Arbiter, we must, in our response, either accept such Local Arbiter or propose a different Local Arbiter. If we fail to do either of those things in our response, then your proposed Local Arbiter shall be the Arbiter. If we propose a different Local Arbiter, then you must mail a response to us within ten (10) days after your receipt of such proposal and in such response you must either accept or reject our proposed Local Arbiter . . . . The Arbiter must arbitrate under AAA or JAMS consumer arbitration rules, as selected by the Arbiter. You may obtain copies of AAA and JAMS consumer arbitration rules at the above-referenced websites of AAA and JAMS, respectively. . . . The Arbiter will order the hearing to be held in the county of your residence . . . . Upon your written request in any arbitration initiated by you under this Clause, we will advance the applicable filing, administrative, hearing and Arbiter's fees required under AAA or JAMS consumer arbitration rules (depending on which rules are applicable hereunder) (collectively, "Arbitration

Fees"). Except as otherwise specifically provided in this Clause, we will not advance any of, and you shall be responsible for paying all of, your costs and expenses arising from or relating to any arbitration under this Clause from time to time (including without limitation your attorneys' fees). We will not advance or pay any of your costs, fees or expenses in small claims court (including without limitation your attorneys' fees). In any arbitration initiated by us under this Clause, we will pay the applicable Arbitration Fees, except as otherwise provided in this Clause . . . . . [T]he Arbiter may to the extent permitted by applicable law, award the same damages and relief as a court . . . . You can get our services and decide not to arbitrate.

Dckt. No. 4, Ex. A.

Debtor argues arbitration should not be enforced because it presents an inherent conflict with the underlying purposes of the Bankruptcy Code. Debtor also argues Americash waived its right to assert arbitration because the arbitration agreement was not attached to its proof of claim.

## CONCLUSIONS OF LAW

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) determines the legal sufficiency of the plaintiff's complaint. Scheur v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). In considering a motion to dismiss, this Court must accept as true all facts alleged in the complaint and construe all reasonable inferences in the light most favorable to the plaintiff. See Hoffman-Pugh v. Ramsey, 312

F.3d 1222, 1225 (11th Cir. 2002); see also Ashcroft v. Iqbal, 556 U.S. 662, 677-79 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007))(A complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"). However, the Court need not accept the complaint's legal conclusions as true, only its well-pled facts. Iqbal, 556 U.S. at 678-79. The plaintiff is required to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. The well-pled complaint must allege "something beyond . . . mere possibility . . . ." Twombly, 550 U.S. at 556-57.

Americash pursues two grounds for dismissal. [2] Americash first asserts the complaint fails to state a claim for relief because Georgia law is not applicable to a loan physically

---

[2]  In its brief, Americash does not pursue its third argument that the complaint should be dismissed for Debtor's failure to file a response to its Motion to Dismiss within 14 days of service of the  motion pursuant to Southern District of Georgia Local Rule 7.5; however, Debtor's brief addresses this argument. The Court finds Debtor was not required to file a response within 14 days because under the Bankruptcy Court's "Uniformity of Practice" Local Rule 7.5 applies in bankruptcy cases or proceedings only if directed by the Bankruptcy Judge or by the notice issued by the Bankruptcy Clerk.  No such direction or notice was given in this adversary proceeding.  Furthermore, Americash's failure to pursue this argument is deemed an abandonment of this claim.

AO 72A

(Rev. 8/82)

entered into in South Carolina. Second, Americash asserts the complaint should be dismissed because under the Federal Arbitration Act the cause of action is subject to arbitration.

The threshold issue is whether to enforce the arbitration provision. Recognizing the strong federal policy favoring arbitration, the Court considers the matter through the framework set forth in In re Elec. Mach. Enter., Inc., 479 F.3d 791 (11th Cir. 2007).

In In re Electric Machinery, the debtor brought an adversary action seeking turnover of money and the defendant moved to compel arbitration pursuant to the parties' pre-petition agreement. The Eleventh Circuit set forth the framework of the Federal Arbitration Act and the burden of proof stating:

> The Federal Arbitration Act ("FAA") provides, in pertinent part, that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA establishes a federal policy favoring arbitration. See Shearson/American Express, Inc. v. McMahon, 482 U.S. 220, 226, 107 S.Ct. 2332, 2337, 96 L.Ed.2d 185 (1987). However, "[l]ike any statutory directive the Arbitration Act's mandate may be overridden by a contrary congressional command." Id. "Thus, unless Congress has clearly expressed an intention to preclude arbitration of the statutory claim, a party is bound by its agreement to arbitrate." Davis v. Southern Energy Homes, Inc., 305 F.3d 1268, 1273 (11th Cir. 2002). The party opposing arbitration has the burden of proving "that Congress intended to preclude a waiver of [] judicial remedies for [the particular claim] at issue." McMahon, 482 U.S. at 227,

107 S.Ct. at 2337.

In McMahon, the United States Supreme Court promulgated a three factor test in order to determine Congress' intent: "(1) the text of the statute; (2) its legislative history; and **(3) whether 'an inherent conflict between arbitration and the underlying purposes [of the statute]' exists."** Davis, 305 F.3d at 1273 (alteration in original) (quoting McMahon, 482 U.S. at 227, 107 S.Ct. at 2338). In applying the McMahon factors, **"'questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration.'"** Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26, 111 S.Ct. 1647, 1652, 114 L.Ed.2d 26 (1991).

In re Elec. Mach. Enter., Inc., 479 F.3d 791,795-96 (11th Cir. 2007)(brackets in original) (emphasis added).   The Eleventh Circuit concluded the first two McMahon factors were not implicated in bankruptcy because the Bankruptcy Code does not evidence a Congressional intent to exclude arbitration from the statutory framework of the Bankruptcy Code and therefore, only the third factor remains for a bankruptcy court to consider.   Id.

In determining whether an inherent conflict exists between the Bankruptcy Code and the federal policy favoring arbitration, bankruptcy courts first consider if the proceeding is core or non-core.   See 28 U.S.C. §157(b)(2)(listing examples of core matters).   If a matter is non-core, the bankruptcy court does not have the discretion to decline to send the matter to arbitration.   In re Elec. Mach. Enter., Inc., 479 F.3d at 795-

96.   In a core proceeding, "the bankruptcy court must still analyze whether enforcing a valid arbitration agreement would inherently conflict with the underlying purposes of the Bankruptcy Code." Id.  The Eleventh Circuit concluded the In re Electric Machinery claim was based upon state law rights brought by the debtor against a creditor and was non-core (not a cause of action that would only arise in bankruptcy or arise under the Bankruptcy Code) and therefore the bankruptcy court did not have discretion to deny arbitration.  Id. at 798.

Alternatively, the Eleventh Circuit concluded even if the debtor's claim was a core proceeding, there was no evidence of an inherent conflict between arbitration and the underlying purposes of the Bankruptcy Code. Id. at 798-99.  Only "if the bankruptcy court actually makes a sufficient finding that enforcing an arbitration agreement would inherently conflict with the Bankruptcy Code does it have the discretion to deny enforcement of the arbitration agreement." Id. at 799.  Thus, In re Electric Machinery makes both core and non-core claims subject to arbitration considerations.

The heart of the current complaint is Debtor's claim that Americash violated Georgia's Payday Lending Act and Georgia's usury laws.  Both claims arise under Georgia law, not

the Bankruptcy Code. Debtor's complaint is to recover money or property under Federal Rule of Bankruptcy Procedure 7001(1) and Debtor prays for attorney fees and expenses and punitive damages. Dckt. No. 1. The root of Debtor's argument is the purported state law violations and Debtor's complaint is for damages stemming therefrom. The complaint as plead appears to be a non-core matter in which this Court lacks discretion to deny arbitration.

However, Debtor argues his request for damages is just ancillary to the core objection to claim. He contends he could not "proceed with an objection to claim prior to the filing of this adversary because a deficiency notice is issued in the event debtor requests a hearing. If the pleading is not amended to remove this language the pleading is dismissed. Counsel felt as though a determination that a loan violated state law was not one that the court would be willing to make absent a hearing. Had the movant attached the arbitration agreement to the proof of claim debtor would have proceeded with an objection rather than an adversary. Bankr[uptcy]Rule 3007 allows an objection to claim to be filed as [an] adversary." Dckt. No. 23, p. 6. This argument is unavailing.

Debtor first states the Court's procedures[3] prevented him from filing an objection to claim and then states he would have filed an objection to claim had Americash attached the arbitration agreement to its proof of claim.  However, the loan is the basis of Americash's claim, not the arbitration agreement. Debtor also has not articulated how filing an adversary proceeding, as opposed to an objection to claim, prevents Debtor from raising and addressing all legal theories relating to Americash's claim.  Also, an objection to claim may be filed as an adversary under Federal Rule of Bankruptcy Procedure 3007. Whether an objection to claim is brought as a contested matter or an adversary proceeding, does not affect the determination of whether an objection to claim is core or non-core.  See In re Cooley, 362 B.R. 514, 520 (Bankr. N.D. Ala. 2007)("[I]f the debtor brought the cause of action, contested matter or other dispute underlying the proceeding with him when he filed bankruptcy, no inherent conflict is likely to be found with the enforcement of contractual arbitration.  If such cause of action, contested matter or other dispute could only exist after the bankruptcy

---

[3] Debtor may be referring to this Court's General Order 2005-1, requiring specific noticing and service procedures for certain pleadings.

AO 72A
(Rev. 8/82)

case was commenced, then an inherent conflict exception under the
McMahon standard is more likely to be found."). Furthermore,
even if this adversary proceeding is core,[4] arbitration is
appropriate for the following reasons:

Debtor cites In re White Mountain Mining Co., L.L.C.,
403 F.3d 164 (4th Cir. 2005), and argues the Court should decline
sending the matter to arbitration because arbitration conflicts
with one of the Bankruptcy Code purposes, which is to avoid
piecemeal litigation by promoting judicial economy. In re White
Mountain Mining Co., L.L.C., 403 F.3d 164, 169 (4th Cir. 2005).
In In re White Mountain, the principal of a corporate chapter 11
debtor filed an adversary proceeding against the debtor seeking
a determination that pre-petition cash advances from the
principal to the corporation were loans due and owing. The Fourth
Circuit affirmed the bankruptcy court's order denying arbitration
finding the debtor satisfied McMahon's inherent conflict prong,
because ordering international arbitration to be conducted in
England would substantially interfere with the corporation's
reorganization efforts and conflict with the bankruptcy purpose
of centralized disputes. Id. at 170.

---

[4] See 28 U.S.C. §157(b)(2)(B)(listing the allowance or
disallowance of claims against the estate as a core matter).

The facts of the current case are very different from those in In re White Mountain.  In the current matter, Debtor's chapter 13 plan has been confirmed with a 0% dividend to unsecured creditors.  Allowing arbitration to determine whether Debtor is entitled to relief because Americash allegedly violated Georgia's pay day lending statute or its usury laws will not interfere with confirmation or the ability of Debtor to reorganize his debts. See In re Cooley, 362 B.R. 514, 522 (Bankr. N.D. Ala. 2007)(allowing arbitration where chapter 13 plan had been confirmed and finding arbitration would have little impact on the debtor's ability to reorganize); In re Friedman's Inc., 372 B.R. 530, 543-44 (Bankr. S.D. Ga. 2007)(rejecting a trustee's argument that centralized litigation and preventing multiple forums and judicial efficiency required denial of arbitration and reasoning that such common bankruptcy purposes would swallow the whole because they are present in every bankruptcy case).  The bankruptcy court in In re Friedman's Inc. further emphasized that the chapter 11 plan had not been confirmed so arbitration would not interfere with the bankruptcy reorganization process.  Id.; cf. In re Martin, 387 B.R. 307, 321 (Bankr. S.D. Ga. 2007)(denying motion to compel arbitration where "arbitration would inherently conflict with the [Bankruptcy] Code because Debtor's plan is

AO 72A
(Rev. 8/82)

entirely contingent on determining whether [creditor's] claim is secured or unsecured. Permitting arbitration as to this claim would drastically affect Debtor's ability to successfully emerge from Chapter 13 since determining the effect of [the creditor's] lien is critical to the Debtor's ability to formulate a payment plan.").

Debtor also argues requiring arbitration will prevent unsecured creditors from benefiting from any recovery from Americash. The Court disagrees. Just because the arbitrator considers the matter does not prevent Debtor's bankruptcy estate from benefiting from any favorable outcome. Whether the arbitrator or this Court awards damages, unsecured creditors could still benefit. In In re Shores of Panama, Inc., 387 B.R. 864, 867 (Bankr. N.D. Fla. 2008), the court explained:

> The Debtor is essentially arguing that arbitration should not be enforced because the outcome will have an impact on the ultimate distribution of the estate since all creditors will eventually be paid from the same pot of money. This connection is too tangential to disregard the agreement to arbitrate and does not present an inherent conflict with the Bankruptcy Code. Farmland Industries, 309 B.R. at 21 (stating that, although parties other than the debtor may be affected by the outcome, "the interest of non-debtor parties in the outcome of the litigation is [not] sufficient for the Court to abrogate a portion of a valid, pre-petition, non-executory contract"). The determination of any one claim will impact on the amount of money that eventually goes to other creditors since all creditors share pro rata unless the plan provides

> otherwise. However, this does not mean that all claims
> must be liquidated in a bankruptcy court or that it
> inherently conflicts with bankruptcy policy for a
> state-law claim to be determined in a nonbankruptcy
> forum. Besides, another important policy of bankruptcy
> is the preservation of creditors' nonbankruptcy rights
> to the extent possible while carrying out the purposes
> of the Bankruptcy Code.

In re Shores of Panama, Inc., 387 B.R. at 867; see also In re Dawsey, 2007 WL 1140358, at *4 (Bankr. M.D. Ala. April 16, 2007)(distribution same result whether awarded by court or arbitrator); In re Cooley, 362 B.R. at 522 ("If the Plaintiff recovers on the claims asserted in her adversary proceeding, the recovery will reduce the allowed claim . . . and thus hasten the pay-out of her Chapter 13 plan, reduce her monthly payments, or possibly increase the amount distributed to other creditors. But these same results will occur whether the recovery is awarded by this Court or an arbitrator. It cannot be seriously argued that the outcome of this adversary proceeding will have a material impact on the Plaintiff's Chapter 13 case or her creditors, other than Wells Fargo."). Arbitration, as opposed to litigation, will not impact the amount of distribution to unsecured creditors. The distribution to creditors from any successful action will be the same regardless of whether the award is from the court or an arbitrator.

For these reasons, based upon the strong federal policy

favoring arbitration and finding no inherent conflict with the Bankruptcy Code, the Court finds arbitration is appropriate for this matter. In re Elec. Mach. Enter., Inc., 479 F.3d at 798-99.

Debtor also argues that filing a proof of claim without attaching the arbitration agreement should be considered a waiver of Americash's right to pursue arbitration. In support, Debtor cites the case of Lewallen v. Green Tree Serv. LLC, 487 F.3d 1085 (8th Cir. 2007) which found the creditor Green Tree waived its right to arbitration stating:

> [A] party may be found to have waived its right to arbitration if it: "(1) knew of an existing right to arbitration; (2) acted inconsistently with that right; and (3) prejudiced the other party by these inconsistent acts." Ritzel, 989 F.2d at 969. Green Tree concedes that it knew at all relevant times that the arbitration provision in Lewallen's loan agreement gave it an existing right to arbitrate. It contends, however, that it did not act inconsistently with its right to arbitrate and that Lewallen suffered no prejudice.
>
> A party acts inconsistently with its right to arbitrate if the party "[s]ubstantially invoke[s] the litigation machinery before asserting its arbitration right." Ritzel, 989 F.2d at 969 (quoting E.C. Ernst, Inc. v. Manhattan Constr. Co. of Tex., 559 F.2d 268, 269 (5th Cir. 1977)). A party substantially invokes the litigation machinery when, for example, it files a lawsuit on arbitrable claims, engages in extensive discovery, or fails to move to compel arbitration and stay litigation in a timely manner. Stifel, 924 F.2d at 158. In concluding that Green Tree acted inconsistently with its right to arbitrate, the

> bankruptcy and district courts observed that Green Tree
> had served "extensive" discovery requests on Lewallen,
> filed substantive motions in the case, and participated
> in six hearings on its proof of claim before seeking
> arbitration.  According to Lewallen's and the district
> court's calculations, Green Tree delayed asserting its
> right to arbitration for sixteen months, where it filed
> its initial proof of claim in March of 2004 and did not
> seek arbitration until July of 2005.

Lewallen, 487 F.3d at 1090.  Converse to Green Tree's actions in

Lewallen, Americash has not engaged in any substantial discovery

and promptly raised the arbitration claim in its motion to dismiss

- - the first pleading it filed after being served with Debtor's

complaint.  There is no prejudicial delay here, or any prejudice

to Debtor.  See In re Yarbrough, 2010 WL 3885046 (Bankr. M.D.

Ala. Sept. 29, 2010)(distinguishing facts of Lewallen where there

was no large delay in assertion of arbitration right).

       Applying the Lewallen waiver factors to this case,

Americash has not acted inconsistently with the right to

arbitration in filing its proof of claim.  Filing a proof of

claim does not initiate a contested matter.  The adversary

complaint is the first time Americash knew Debtor intended to

challenge the validity of Americash's loan.  See In re Martin,

387 B.R. at 315 (the filing of a proof of claim is not a waiver

of right to arbitrate because at that moment the creditor "had no

need to seek arbitration as there was no dispute over the status

of the claim."). The timeline of events evidences there was no prejudicial delay by Americash. Americash filed its proof of claim in May 2017. Debtor filed this adversary proceeding in February 2018 and served the summons in March 2018. Americash filed its Motion to Dismiss asserting the arbitration claim in April 2019.[5] Americash has not yet filed an answer and the parties have not engaged in discovery. It is early in the case and no scheduling order has been entered. There is no prejudice to Debtor. For these reasons, the Court finds Americash has not waived its right to seek arbitration.

Debtor also asserts the entire contract is illegal under Georgia law, including the arbitration provision. Debtor argues the contract and particularly the arbitration agreement has the typed signature of Debtor; however, Debtor does not argue Debtor was not bound the contract, or that Debtor did not assent to the contract. Debtor's arguments of illegality of the contract as well as the argument that the arbitration provision is unconscionable hinge on whether Georgia's payday lending and

---

[5] Debtor filed an objection to Americash's proof of claim in May 2019 and Debtor withdrew the objection in August 2019. It was not until Debtor filed an objection to Americash's claim did a contested matter commence. See Fed. R. Bankr. P. 9014. By the time the objection to claim was filed, Americash had already asserted its right to arbitration in its Motion to Dismiss and Debtor was aware of this assertion.

usury laws apply when a Georgia resident physically travels into South Carolina and obtains such a loan from a South Carolina lender. Because this issue goes to the contract as a whole, not the arbitration agreement, the matter should be resolved by arbitration. Jenkins v. First Am. Cash Advance of Georgia, LLC, 400 F.3d 868, 877 (11th Cir. 2005)("We have held that '[i]f . . . [the party's] claims of adhesion, unconscionability, . . . and lack of mutuality of obligation pertain to the contract as a whole, and not to the arbitration provision alone, then these issues should be resolved in arbitration.'"). The Eleventh Circuit has explained, "allegations of illegality go to the deferred payment transactions generally, and not to the arbitration agreement specifically . . . [T]herefore, an arbitrator, and not a federal court, should determine whether the underlying transactions are illegal and void." Jenkins, 400 F.3d at 881. "Because assent to the contracts was not in question, we . . . held that whether or not the deferred payment transactions were usurious and void was an issue to be decided by an arbitrator, not a federal court." Id. at 882.

Alternatively, even if the Court concludes this challenge is limited to the arbitration agreement itself, the Court finds it is not unconscionable. See In re Jenkins, 400

F.3d at 879 n.9 (alternatively noting arguments that the arbitration agreement itself, as opposed to the contract as whole, is unconscionable may be decided by the court).   Pursuant to O.C.G.A. §16-17-2, the following factors are to be considered:

(A) The relative bargaining power of the parties;

(B) Whether arbitration would be prohibitively expensive to the borrower in view of the amounts in controversy;

(C) Whether the contract restricts or excludes damages or remedies that would be available to the borrower in court, including the right to participate in a class action;

(D) Whether the arbitration would take place outside the county in which the loan office is located or any other place that would be unduly inconvenient or expensive in view of the amounts in controversy; and

(E) Any other circumstance that might render the contract oppressive.

O.C.G.A. §16-17-2(c)(2).   This arbitration clause is very similar to the one found in Jenkins, and dissimilar to the one in White Mountain.   In the current arbitration clause, Americash agrees to advance the cost of arbitration fees; allows Debtor to pick the arbiter, even a local one; allows Debtor to opt out of the arbitration agreement and still obtain a loan; it does not restrict damages that otherwise would be available if the matter was held in court; and it states that any arbitration hearing will be held in the county of Debtor's residence.   Dckt. No. 4,

Ex A. Given the terms of the arbitration clause, the Court finds the arbitration agreement is not unconscionable.

For the foregoing reasons, this matter is proper for arbitration provided that: either party may make a demand for arbitration in accordance with the arbitration agreement within 21 days of entry of this order, filing a curtesy copy of the demand with this Court within 3 days of the demand. Should a demand for arbitration not be filed with the Court, this Adversary Proceeding shall be dismissed. If arbitration is pursued, the parties are ORDERED to update the Court within 14 days of the conclusion of the arbitration proceeding.

**[END OF DOCUMENT]**